UNITED STATES, Plaintiff, Appellee,

v.

ONE DAIRY FARM, etc.,
Defendants, Appellees.

Appeal of Arnaldo and Eric ORTIZ
CAMERON, Claimants.

No. 90–1323.

United States Court of Appeals,
First Circuit.

Heard Oct. 5, 1990.

Decided Nov. 9, 1990.

Luis A. Delgado Rodriguez and Hiram Lazado, for appellants.

Eduardo E. Toro Font, Asst. U.S. Atty., with whom Osvaldo Carlo Linares, Acting U.S. Atty., was on brief, for plaintiff, appellee, U.S.

Before TORRUELLA, Circuit Judge, TIMBERS,\* Senior Circuit Judge, and CYR, Circuit Judge.

TIMBERS, Circuit Judge:

Appellants Arnaldo and Eric Ortiz Cameron appeal from an order entered February 16, 1990, in the District of Puerto Rico, Jaime Pieras, Jr., *District Judge*, dismissing appellants' claims to property seized by appellee United States pursuant to an *in rem* civil forfeiture proceeding.

On appeal, appellants assert that forfeiture is too harsh a remedy for the relatively minor transgression of filing a late claim. Accordingly, appellants request that we reverse the district court and allow their claims to proceed on the merits.

For the reasons set forth below, we affirm the order of the district court.

I.

We shall summarize only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal.

This appeal arises from an *in rem* forfeiture proceeding brought by the United States pursuant to 21 U.S.C. § 881(a)(6) (1988). In its complaint, the government

\* Of the Second Circuit, sitting by designation.

alleged that the defendant properties were proceeds traceable to the sale of controlled substances.

Luis Hiram Ortiz Cameron (Cameron), the owner of the defendant properties, allegedly was involved in smuggling controlled substances into Puerto Rico through a clandestine airstrip. The government estimated that Cameron was receiving between $30,000 and $75,000 per month from 1984 to 1988. In one 1988 drug transaction, he purportedly received the equivalent of $240,000. Cameron invested his money in the defendant properties which included, among other things, cattle, real estate and prized lottery tickets. Prior to his involvement at the airstrip, Cameron was either unemployed or working at low-paying jobs. He subsequently was indicted in the United States District Court for the District of Puerto Rico for his role in importing drugs through the airstrip.

Appellants Arnaldo and Eric Ortiz Cameron are brothers of Luis Cameron. The record does not demonstrate that either brother has sufficient legal earnings to claim ownership of the $3,000,000 in the defendant properties. Nor does either brother have a recorded proprietary interest in any of the seized properties.

The government filed the instant forfeiture proceeding on November 3, 1989. Arnaldo Ortiz Cameron was served personally with the pleadings by United States Marshals on November 4, 1989. On that date, Eric Ortiz Cameron also was served through his brother Arnaldo. On December 11, 1989, appellants filed claims requesting protection of their alleged interests in the defendant properties. On December 27, 1989, appellants filed an answer to the government's complaint.

The government filed a motion to dismiss the claims of appellants since they were not timely filed. This motion was not opposed by appellants. The government filed several additional motions in the case. None of these motions was answered by appellants.

On February 16, 1989, the district court entered an order granting the government's motion to dismiss appellants' claims. This appeal followed.

## II.

We review the district court's order dismissing appellants' claims under the abuse of discretion standard. *United States v. Beechcraft Queen Airplane*, 789 F.2d 627, 630 (8th Cir.1986).

Proceedings in forfeiture cases are governed by the Federal Rules of Civil Procedure and the Supplemental Rules for Certain Admiralty and Maritime claims. *United States v. United States Currency in the Amount of $2,857.00*, 754 F.2d 208, 212–13 (7th Cir.1985). Rule C(6) of the Supplemental Rules provides:

"[t]he claimant of property that is subject of an action *in rem* shall file a claim within 10 days after process has been executed, or within such additional time as may be allowed by the court, and shall serve an answer within 20 days after the filing of the claim."

Generally, "[t]he filing of a claim is a prerequisite to the right to file an answer and defend on the merits." *United States v. Fourteen (14) Handguns*, 524 F.Supp. 395, 397 (S.D.Tex.1981). A party who fails to file a claim normally lacks standing to contest a forfeiture. *United States v. $38,-000.00 in U.S. Currency*, 816 F.2d 1538, 1544–45 (11th Cir.1987). The government contended and the district court held that appellants lacked standing since they failed to file a timely claim or answer. We agree.

Nevertheless, appellants assert that we should relieve them of the harsh consequences emanating from their failure to file a timely claim and answer. Appellants rely on a line of cases where claimants were relieved of the consequences of an untimely filed claim. *United States v. One (1) 1979 Mercedes 450SE*, 651 F.Supp. 351 (S.D.Fla.1987); *United States v. One 1979 Oldsmobile–Cutlass Supreme*, 589 F.Supp. 477 (N.D.Ga.1984); *United States v. 1967 Mooney M20–F Aircraft, N9588M*, 597 F.Supp. 531 (N.D.Ga.1983); *Fourteen (14) Handguns, supra*, 524 F.Supp. 395; *United States v. Articles of Hazardous Substance*, 444 F.Supp. 1260 (M.D.N.C.), *modified*, 588 F.2d 39 (4th Cir.1978).

■ Appellants' reliance on these cases is misplaced. They involved some mitigating factor which militated against strictly adhering to the ten day claim requirement of Rule C(6). The respective courts excused the late filing or extended the time for filing the claim because either a claimant in good faith had attempted to file a claim on time, *Articles of Hazardous Substance, supra,* 444 F.Supp. at 1263, or had relied detrimentally on misinformation from a governmental agency, *One 1979 Oldsmobile, supra,* 589 F.Supp. at 478; *1967 Mooney, supra,* 597 F.Supp. at 532, or had expended considerable resources preparing the case for trial, *One 1979 Mercedes, supra,* 651 F.Supp. at 354–55.

The instant case does not present any of the mitigating factors which would warrant relieving appellants of the consequences of their own inaction. Appellants here neither attempted to file a claim on time, relied on misinformation from a governmental agency, nor expended considerable resources in preparation for trial. The record demonstrates that appellants completely disregarded the time requirements for filing both the claim and the answer. The record also shows that appellants failed to respond to other motions filed by the government. We fail to see how the cited authorities remotely support appellants' request for relief.

Appellants also mischaracterize the holding in *Fourteen (14) Handguns, supra,* 524 F.Supp. 395. Contrary to appellants' assertion, the court in that case did not extend the time in which the respondent could file a claim. In fact, the court granted the government's motion to strike respondent's answer since his claim was not properly filed. *Id.* at 397. This holding is representative of a species of cases which require strict compliance with Rule C(6). *Fourteen (14) Handguns* is one of the many cases supporting the government's position.

While some courts have relieved claimants of the harsh results of technical noncompliance with the filing requirements of Rule C(6), those holdings should not be construed as granting claimants a license to ignore completely the statutory requirements. If appellants needed additional time to file a claim, Rule C(6) has a built-in time extension which permits claimants to petition the district court for further time to file a claim. In view of this, we find no merit in appellants' argument.

Since appellants failed to file a claim within the time prescribed by Rule C(6), they lacked standing to contest the forfeiture. *$8,000.00 in U.S. Currency, supra,* 816 F.2d at 1544–45. We hold that the district court did not abuse its discretion in dismissing appellants' claims. Our holding is in accord with the holdings of numerous other courts which have required strict adherence to Rule C(6). *Beechcraft Queen Airplane, supra,* 789 F.2d at 630; *United States Currency in the Amount of $2,857.00, supra,* 754 F.2d at 212–13; *United States v. One 1978 Piper Navajo PA–31 Aircraft,* 748 F.2d 316, 319 (5th Cir.1984); *United States v. One 1978 BMW Vin No. 5391202,* 624 F.Supp. 491, 492 (D.Mass. 1985); *United States v. Properties Described in Complaints,* 612 F.Supp. 465, 466–68 (N.D.Ga.1984), *aff'd sub nom. United States v. One 1979 Mercedes Benz,* 779 F.2d 58 (11th Cir.1985).

While not cited by appellants, we are mindful of our holding in *United States v. One Urban Lot Located at 1 Street A–1,* 885 F.2d 994, 999 (1st Cir.1989) (Brown, J.). Our holding there, however, would not require a different result in the instant case. In *One Urban Lot,* the district court entered a default judgment against all persons who claimed an interest in two separate parcels of land because they failed to satisfy the requirements of Rule C(6). The claimants moved the district court to vacate the default judgments. Their motions were denied. On appeal, we held that appellants who claimed an interest in the first parcel of land were not entitled to relief from the default judgment. *Id.* at 999. Appellants' failure to file a claim or answer was critical to our holding: "[w]hatever sympathy the positions of [appellants] might generate, sympathy alone does not suffice to require the district judge to disregard their complete failure to abide by

the command of Supp. Rule C(6) to file a verified claim or answer." *Id.*

By contrast, we found the circumstances surrounding appellant's claim to the second parcel of land sufficiently dissimilar to warrant vacating the district court's default judgment. *Id.* at 1002. Although appellants who claimed an interest in the second parcel of land also failed to file a claim, they did file a timely verified answer. We held that "where the claimant timely filed a *verified* answer containing all the information required in the claim, the answer may be deemed to have fulfilled the function of a claim in terms of establishing the owner's standing." *Id.* at 999 (emphasis in original).

Appellants' actions in the instant case closely approximate those of the parties who claimed an interest in the first parcel of land. Appellants here, by completely disregarding the requirements of Rule C(6), effectively did not file a claim or answer. Judge Brown emphasized in *One Urban Lot* that a district judge should not disregard a claimant's complete failure to abide by Rule C(6). Our holding today, which affirms the district court's dismissal of appellants' claims, is in accord with the holding of the panel in *One Urban Lot.*

We hold that the district court did not abuse its discretion in dismissing appellants' claims.

### III.

To summarize:

The district court did not abuse its discretion in granting the government's motion and dismissing appellants' claims. Appellants failed to file a claim or answer within the time prescribed by Rule C(6) and failed to advance any reason which would warrant relieving them of the consequences of their own inaction.

AFFIRMED.